UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tammy S. Forrest,

    Plaintiff,

    v.                                                    Civil Action No. 2:10-CV-20

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

**<u>OPINION AND ORDER</u>**
(Docs. 9 and 12)

Plaintiff Tammy S. Forrest brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and reversal of the decision of the Commissioner

of Social Security ("Commissioner") denying her application for disability insurance

benefits and supplemental security income.  Pending before the Court are Forrest's

Motion seeking an order reversing the Commissioner's decision or remanding for further

proceedings (Doc. 9), and the Commissioner's Motion seeking an order affirming the

same (Doc. 12).

For the reasons set forth below, the Court DENIES Forrest's Motion to reverse

and remand (Doc. 9) and GRANTS the Commissioner's Motion to affirm.  (Doc. 12).

**Background**

I.    **Relevant Facts**

Forrest was forty-one years old on the alleged disability onset date. (Administrative Record ("AR") 18, 99.)  She graduated high school and has completed some additional vocational training.  (AR 18-19.)  Forrest lives with a long-time friend. (AR 138.)

Forrest has worked as a housekeeper, machine operator, and a companion aide/caregiver.  (AR 19, 22-23, 125, 130.)  She stopped working in May 2007 due to severe chronic neck and back pain, but resumed working in September 2008 as a part-time in-home caregiver and was working at the time of her hearing until September 19, 2009, when her client passed away.  (AR 192.)  In her March and July 2008 Function Reports, Forrest stated that she has problems lifting, walking, squatting, sitting, bending, kneeling, standing, reaching, completing tasks, and concentrating due to back pain.  (AR 143, 171.)  She further stated that she has trouble sleeping, and that she is unable to ride horses, swim, hike, and ride a bicycle, activities she used to engage in regularly.  (AR 167.)

Forrest reported that her daily activities include taking her medications, attending physical therapy, household chores, simple cooking, and caring for her dog.  (AR 166.) Forrest helps out a friend on a regular basis by driving him to the grocery store or appointments.  (AR 167.)  She is generally able to provide for her own personal care, though she states that it takes longer than it used to due to pain.  (*Id*.)  Forrest can prepare simple meals such as soup, sandwiches, and microwave meals.  (AR 168.)  She is unable

to do yard work or home repairs but can clean and do laundry with some assistance.  (AR 168.)  Forrest can drive a car and go out on her own.  (AR 169.)  She can shop for food and clothing, pay bills, and handle money, but engages in only limited social activity. (AR 169-72.)  Forrest is able to follow written or spoken directions and generally gets along with authority figures.  (AR 171-72.)  Although Forrest testified at her hearing that she suffers from anxiety, she did not report any significant limitations in her activities of daily living arising from any mental health impairments.  (AR 23.)

In an undated Pain Report, Forrest stated that she suffers from continuous back and neck pain and that the pain is worse when she walks, lifts or bends.  (AR 149-55.) Forrest takes methadone, Klonopin, and oxycodone to control her pain and symptoms. (AR 23.)

## II.    Procedural History

In February 2008, Forrest applied for disability insurance benefits and supplemental security income, alleging that she became disabled on May 16, 2007 due to back and neck pain, anxiety and depression.  (AR 7, 10.)  Her applications were denied initially and upon reconsideration.  (AR 7.)  Forrest timely requested an administrative hearing, which occurred on September 10, 2009.  (AR 15-36.)  Forrest testified at the hearing and was represented by counsel.

On September 28, 2009, Administrative Law Judge ("ALJ") Thomas Merrill issued a decision finding that Forrest was not disabled under the Social Security Act. (AR 7-14.)  The Decision Review Board failed to review the ALJ's determination within the allotted time, thus rendering it the final decision of the Commissioner.  (AR 1-3.)

Having exhausted her administrative remedies, Forrest timely filed the instant action on January 28, 2010.  (Doc. 1.)

## ALJ Determination

### I.      Five-Step Sequential Evaluation Process

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national

economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)

(clarifying that the burden shift to the Commissioner at step five is limited, and the

Commissioner "need not provide additional evidence of the claimant's residual functional

capacity").

## II.    ALJ's Written Decision

Employing this five-step analysis, ALJ Merrill first determined that Forrest

"engage[d] in substantial gainful activity from January 2009 until mid-September 2009,"

when her hours as a caregiver increased such that her earnings were in excess of the

amount generally presumed to establish substantial gainful work activity.  (AR 9.)  The

ALJ found that Forrest "did not stop working due to her medical condition, but rather,

because the work was no longer available."  (*Id.*)  The ALJ noted that "[w]hile the

claimant has requested that [her caregiver] work be considered part of a 'trial work

period' this issue is moot because, as is set forth below, the undersigned finds that the

claimant has not been disabled within the meaning of the Social Security Act at any time

relevant to this decision."  (*Id.*)

At step two, the ALJ found that Forrest has the severe impairments of "mild

degenerative disc disease of the cervical and lumbar portions of the spine."  (AR 10.)

The ALJ determined that Forrest's anxiety and depression did not cause more than

minimal limitation in her ability to perform basic mental work activities and are therefore

not severe.  (*Id.*)  In so concluding, the ALJ considered the "four broad functional areas

set out in the disability regulations for evaluating mental disorders and in section 12.00C

of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1)" including

activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation, or the "paragraph B" criteria.  (AR 10-11.)

At step three, the ALJ found that Forrest does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (AR 11.)  Next, the ALJ determined that Forrest has the RFC to perform the full range of light work.[1]  (Id.)  In making this RFC finding the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,"  based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Rulings 96-4p and 96-7p.  (Id.)  The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings 96-2p, 96-5p, 96-6p, 06-3p.  (Id.)

The ALJ explained that, although Forrest's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms "are not credible to the extent they are inconsistent with the above [RFC] assessment."  (AR 12.)  In support of this credibility determination, the ALJ referenced the objective medical evidence, the subjective factors including Forrest's daily activities and testimony, and the opinion evidence.  (AR 12-14.)

---

[1] Pursuant to 20 C.F.R. § 404.1567(b) and 416.967(b), "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

At step four, the ALJ determined that Forrest is able to perform her past relevant work as a companion aide and as a housekeeper because "[t]his work does not require the performance of work-related activities" precluded by Forrest's RFC.  (AR 14.)  Because the ALJ concluded that Forrest can perform her past relevant work, he did not make any finding relative to step five, whether Forrest can do any other work.  The ALJ accordingly concluded that Forrest has not been under a disability from the alleged onset date until the date of the decision.  (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual

7

review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

The reviewing court's role with respect to the Commissioner's disability decision is "'quite limited[,] and substantial deference is to be afforded the Commissioner's decision.'"  *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quoting *Burris v. Chater*, No. 94 Civ. 8049, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996)).  The court should not substitute its judgment for that of the Commissioner.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  The Second Circuit explained: "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having 'rational probative force.'"  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consol. Edison Co.*, 305 U.S. at 230).

Therefore, if the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists.  *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998).

<u>**Analysis**</u>

Forrest raises six arguments in support of her request to reverse the ALJ's determination or remand for further proceedings. First, Forrest argues that the ALJ erred at step one in concluding that she engaged in substantial gainful activity from January 2009 until mid-September 2009. (Doc. 16 at 2.) Second, Forrest argues that the ALJ improperly found that her testimony was not credible. (Doc. 9 at 9-12.) Third, she argues that the ALJ improperly rejected the opinion of her primary care physician. (Doc. 9 at 12-13.) Fourth, Forrest argues that the ALJ erroneously deemed her depression and anxiety non-severe. (Doc. 9 at 14-15.) Fifth, Forrest argues that the ALJ improperly found that she retains the RFC for the full range of light work. (Doc. 9 at 15-16.) Finally, Forrest argues generally that substantial evidence does not support the ALJ's decision that she is not disabled. (Doc. 9 at 16-18.) In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. (Doc. 12 at 1.)

## I.     Error at Step One, if Any, Was Harmless.

At step one, the ALJ concluded that Forrest "engage[d] in substantial gainful activity from January 2009 until mid-September 2009," when her hours as a caregiver increased such that her earnings were in excess of the amount generally presumed to establish substantial gainful work activity. (AR 9); *see* 20 C.F.R. §§ 404.1572, 404.1574. The ALJ noted that "[w]hile the claimant has requested that [her caregiver] work be considered part of a 'trial work period' this issue is moot because, as is set forth below,

the undersigned finds that the claimant has not been disabled within the meaning of the Social Security Act at any time relevant to this decision." (*Id.*)

Whether Forrest's caregiver work was a trial work period, as opposed to substantial gainful activity, cannot be "moot," in light of the ALJ's adverse conclusion that Forrest is not disabled. In concluding that Forrest is not disabled, the ALJ found at step four that Forrest retains the RFC to perform her past relevant work as a caregiver. To reach a finding of not disabled upon this basis, the past relevant work *must* be substantial gainful activity. *See* 20 C.F.R. § 416.960(b)(1) ("Past relevant work is work that you have done within the past 15 years[ ] that was *substantial gainful activity* . . . ." (emphasis added)); 20 C.F.R. § 404.1571 ("If you are able to engage in substantial gainful activity, we will find that you are not disabled.") Accordingly, the ALJ should have analyzed whether the caregiver work constitutes substantial gainful activity, including whether the work was part of a trial work period and whether the work was performed under special conditions. *See* 20 C.F.R. §§ 404.1592, 404.1573(c). Nevertheless, this omission is harmless because the ALJ's finding that Forrest is not disabled is supported by an alternate conclusion that Forrest retains the RFC to perform her past relevant work as a housekeeper, work that Forrest does not dispute constitutes substantial gainful activity. (Doc. 16 at 2-4, 6.)

Generally, the harmless error rule applies in social security cases, and courts have held that ALJ error which does not negate the validity of the ALJ's ultimate conclusion is harmless and thus does not warrant reversal. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990);

*Dye v. Barnhart*, 180 Fed. Appx. 27, 30 (10th Cir. 2006) (stating that, although an ALJ commits legal error in failing to discuss highly probative evidence, harmless error may be established if the ALJ's decision contains "other objective findings . . . that either negate the validity of [such evidence], or that affirmatively establish that [the claimant] does not meet the other requirements for the listing"). The Second Circuit has instructed as follows: "[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); see also *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

Here, assuming, as Forrest argues, that her caregiver work was not substantial gainful activity because the work was either part of a trial work period or performed under special conditions, the ALJ's failure to properly analyze the issue does not negate the validity of his ultimate conclusion. Forrest concedes in her supplemental memorandum that the ALJ alternately concluded that Forrest retains the RFC to perform her past relevant work as a housekeeper. (Doc. 16 at 6.) Forrest does not argue that her housekeeper work was not substantial gainful activity. Therefore, as long as the ALJ's conclusion that Forrest can perform her past relevant work as a housekeeper is supported by substantial evidence, the ALJ's failure to properly analyze whether Forrest's caregiver work was substantial gainful activity is harmless. As discussed below, the Court finds that the ALJ's conclusion that Forrest retains the RFC to perform her past relevant work as a housekeeper is supported by substantial evidence. Accordingly, application of the

correct legal principles to the record could lead to only one conclusion, and there is no

need to require agency reconsideration. *Johnson*, 817 F.2d at 986.

## II.   Substantial Evidence Supports the ALJ's Conclusion that Forrest's Testimony Was Not Entirely Credible.

Next, Forrest argues that the ALJ erred in determining that Forrest's testimony

about her limitations was not entirely credible.  The ALJ found that Forrest's "significant

activity level" in combination with medical evidence "cast doubt as to the veracity of

[her] complaints."  (AR 13.)

When determining a claimant's RFC, the ALJ is required to take the claimant's

reports of pain and other limitations into account, 20 C.F.R. § 416.929; *see McLaughlin*

*v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 704-05 (2d Cir. 1980), but is not

required to accept the claimant's subjective complaints without question.  The ALJ may

exercise discretion in weighing the credibility of the claimant's testimony in light of the

other evidence in the record.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

The regulations provide a two-step process for evaluating a claimant's assertions

of pain and other limitations.  At the first step, the ALJ must decide whether the claimant

suffers from a medically determinable impairment that could reasonably be expected to

produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  That requirement stems from

the fact that subjective assertions of pain alone cannot ground a finding of disability.  20

C.F.R. § 404.1529(a); *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)

("[D]isability requires more than mere inability to work without pain.  To be disabling,

pain must be so severe . . . as to preclude any substantial gainful employment.").  If the

claimant does suffer from such an impairment, at the second step, the ALJ must consider

"the extent to which [the claimant's] symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence" of record.  *Id.*  The ALJ must

consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his]

restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements

[he] make[s] to medical sources during the course of examination or treatment, or to [the

agency] during interviews, on applications, in letters, and in testimony in . . .

administrative proceedings."  20 C.F.R. § 404.1512(b)(3); *see* also 20 C.F.R. §

404.1529(a).

It is the province of the Commissioner, not the reviewing court, to "appraise the

credibility of witnesses, including the claimant."  *Aponte v. Sec'y of Health & Human

Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  If the Commissioner's findings are supported

by substantial evidence, the court must uphold the ALJ's decision to discount a

claimant's subjective complaints.  *Id.* (citing *McLaughlin*, 612 F.2d at 704).  "When

evaluating the credibility of an individual's statements, the adjudicator must consider the

entire case record and give specific reasons for the weight given to the individual's

statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Here, the ALJ applied the two-step process to assess whether Forrest's asserted

limitations were credible.  The ALJ found:

> The claimant testified that she has been unable to work due to problems
> with her back and knees.  She also asserted that she has panic attacks, is not
> good around people and that she gets nervous. . . . She complained that she
> is unable to do any lifting, pushing, pulling or tugging.  She described her
> work as a [caregiver], . . . [including] tasks such as bandaging wounds,

> preparing simple meals and driving the patient to the doctor.  She reported
> pain across her back . . . and . . . in her right shoulder.
>  . . . .
> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with the above
> residual functional capacity assessment.

(AR 12.)  The ALJ then discussed Forrest's medical records and self reports in detail,

providing specific reasons for the weight he gave to Forrest's statements.  (AR 12-13.)

Upon review of the record, the Court concludes that the ALJ's credibility

assessment is supported by substantial evidence.  For example, Garry Weischedel, M.D.,

who was Forrest's primary care physician between 2005 and October 2007, noted in

September 2007 that Forrest's back was "much improved" and that she "wants to return

to work full time.  She feels she is able to handle that."  (AR 231.)  Dr. Weischedel's

older treatment notes document consistent stability and, in some cases, progress.  In

August 2007, Dr. Weischedel observed that Forrest was "doing a home exercise plan"

and that her back was "improving slowly but surely."  (AR 233.)  He also documented

that Forrest "may be going back to work in another month.  She is presently on

unemployment.  She also states that the increase of meds that was given at last visit has

offered her significant improvement."  (*Id.*)  In January 2007, Dr. Weischedel wrote

"things are going well.  Continues to work six days a week.  Enjoys her work."  (AR

250.)

Dr. Weischedel's notes from 2006 similarly document Forrest's relative stability

and improvement, as well as Forrest's reports to him that she was generally doing well.

Notes from December 2006 provide "things are going reasonably well." (AR 252.) In November 2006, following an adjustment in medication dosage, Dr. Weischedel's notes reflect that the increased dose has "helped her pain significantly. She is doing very well. Minimal discomfort. Has increased her hours at work and is getting through. She is quite pleased with the regimen." (AR 254.) In October 2006, Dr. Weischedel wrote that Forrest was "doing rather well . . . working 8-12 hours a day, enjoys her job." (AR 256.) March 2006 notes also state that "discussed her general assistance request. I filled this out at last visit, stating that she had limited abilities to do manual labor but could do other work. [Forrest's partner] Leon was here with her who stated that she was unable to get assistance because of that statement and I need to specify that she can't work at all at this time. I don't think that is the case. She certainly could do some work. She does have her limitations. Hopefully, they can find something for that. I don't feel she is totally disabled. Leon is certainly [ ] not going to be pleased with this finding." (AR 268.)

Forrest's assertion that the ALJ failed to consider the factors specified in SSR 96-7p in assessing her credibility is without merit. SSR 96-7p provides that the ALJ must consider several factors in assessing credibility, including: (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medications the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other

symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  As discussed above, the ALJ's credibility assessment did include a discussion of records pertaining to these factors, followed SSR 96-7p's two-step process, and cited to SSR 96-7p in his analysis.

## III.   Substantial Evidence Supports the ALJ's Decision Not to Credit Dr. Sirois's Interrogatory Responses.

Next, Forrest argues that the ALJ improperly rejected the opinion of Michael Sirois, M.D., her primary care physician.  Evaluation of physician evidence is governed by the "treating physician rule."  As stated in 20 C.F.R. § 404.1527(d)(2), that rule provides that the ALJ must give a treating physician's opinion as to the claimant's disability "controlling weight," so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

"When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Nonetheless, even when a treating physician's opinion is not given *controlling* weight, the opinion is still entitled to *some* weight, given that such physician "[is] likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's]

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

When the ALJ does not give controlling weight to a treating physician's opinion, he must apply the following factors to determine the weight to give the opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(2)).  Additionally, the regulations require that the ALJ must "give good reasons" in the decision for the weight given to the opinion of a treating source opinion.  20 C.F.R. § 404.1527(d)(2). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) (citing *Snell v. Apfel*, 177 F.3d at 133; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (holding that "the Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error")); *see Otts v. Comm'r Soc. Sec.*, 249 Fed. Appx. 887, 889-90 (2d Cir. 2007) (stating that courts "do not hesitate to remand a case when the rejection of a treating physician opinion is not supported by specified reasons") (internal quotations omitted). A treating physician's opinion is given controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir. 1993).

Forrest does not argue that the ALJ failed to credit any of Dr. Sirois's opinions, such as treatment notes, rather, the specific opinions Forrest argues should have been given controlling weight are Dr. Sirois's responses to questions on a form entitled "INTERROGATORIES OF TREATING PHYSICIAN" which was provided to Dr. Sirois by counsel for Forrest.  (AR 456-58.)  The questions ask Dr. Sirois to discuss Forrest's diagnoses and impairments, whether her symptoms are reasonable, and the resulting limitations upon her abilities.

In response to one question, Dr. Sirois opined that Forrest would be unable to maintain a full time job because her impairments would permit her only to work four to six hours per day, four to five days per week "if [she] ha[d] accommodations such as frequent changes [in] position, occasional lying down & no lifting during work."  (AR 458.)  Dr. Sirois was also asked whether he considered Forrest's reports of pain and other symptoms to be credible, to which he checked "yes."  (AR 457.)  Dr. Sirois was asked "[h]ow often and for how long does Ms. Forrest need to recline during the day to relieve pain?"  Dr. Sirois wrote "1-2 times per day for up to one hour."  (AR 458.)

The ALJ discussed Dr. Sirois's report, and determined that it was not entitled to great weight because the report was inconsistent with Dr. Sirois's treatment records and other medical evidence in the record.  (AR 13.)  The ALJ noted that "Dr. Sirois asserts that [Forrest] is not able to work . . . but this is contradictory to his description of [Forrest's] functioning in January 2009."  (*Id.*)  The ALJ further observed that Dr.

Sirois's statements were inconsistent with a May 2009 MRI and with Mary Flimlin, M.D.'s treatment notes.  (*Id.*)

Upon review of Dr. Sirois's treatment notes and the other records the ALJ refers to, the Court agrees with the ALJ's assessment of Dr. Sirois's interrogatory responses, and finds that the ALJ's decision not to give them great weight is supported by substantial evidence.  In January 2009, Dr. Sirois's notes state that "on [Forrest's] present dose of medication she is able to function well.  She has a full-time job as a Medicaid patient caregiver.  In addition she is able to accomplish all of her activities of daily living and is felling that her pain is reasonably controlled and very happy with her level of function as well as feeling productive and happy in life in general." (AR 432.)  Dr. Sirois's February 2009 notes similarly indicate continued symptom control with medications.  (AR 437.)  In March 2009, Forrest reported pain in her hip from falling on the ice, but Dr. Sirois's notes also indicated that Forrest was "doing pretty well on methadone most days." (AR 442.)  Dr. Sirois's May 2009 notes state that Forrest was "doing well on her present dose of methadone" and "doing well without the oxycodone." (AR 445.)

Similarly, Dr. Flimlin's records also support the ALJ's decision not to give great weight to Dr. Sirois's interrogatory responses.  A May 2009 cervical spine imaging report by Dr. Flimlin provided that "alignment and intervertebral disc spaces are within normal limits.  Mild anterior osteophyte formation is seen at the inferior aspect of C3.  No instability is noted on flexion and extension views." (AR 444.)  Further analysis of images by Dr. Flimlin in July 2009 also indicated a normal cervical spinal cord size and

signal and that the "cervical vertebral bodies are preserved normal height, alignment, and marrow signal.  There is mild disc desiccation and disc space narrowing from C2-C6." (AR 447.)  Finally, Dr. Flimlin also noted that Forrest was showing signs of symptom magnification and that Dr. Flimlin was "unable to explain the severity of her pain."  (AR 450.)

In short, many of Dr. Sirois's notes and observations during treatment are not consistent with the August 2009 interrogatories which Forrest contends the ALJ should have given controlling weight.  The records discussed above, cited by the ALJ, provide substantial evidence in support of the ALJ's decision not to credit Dr. Sirois's interrogatory responses.  Thus, the ALJ gave good reasons in support of his decision not to credit Dr. Sirois's report, and the record contains substantial evidence supporting his determination.

Contrary to Forrest's assertions, the ALJ had no "affirmative duty to seek further explanation from Dr. Sirois" in this case.  (Doc. 9 at 12.)  The record was sufficiently developed, *cf. Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999), and it contains adequate evidence upon which the ALJ could make a disability determination.  *See Carvey v. Astrue*, 380 Fed. Appx. 50, 53 (2d. Cir. 2010) ("[B]ecause the record evidence was adequate to permit the ALJ to make a disability determination, we indentify no merit in [the claimant's argument] that the ALJ was obligated *sua sponte* to recontact the treating physicians . . . .").  The ALJ did not "substitute his own expertise or view of the medical proof for the treating physician's opinion."  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  Rather, the ALJ explained that the limitations set forth by Dr. Sirois were

inconsistent with treatment notes and Forrest's daily activities.  (AR 12-13.)  This reasoning is supported by substantial evidence.

## IV.   The ALJ's Determination That Forrest's Mental Impairments Are Not Severe is Supported by Substantial Evidence.

Next, Forrest argues that the ALJ erroneously concluded that her mental impairments are not severe.  In determining whether Forrest's mental impairments are severe, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders," including activities of daily living, social functioning, concentration persistence or pace, and episodes of decompensation, the "paragraph B" criteria.  (AR 10-11.)  The ALJ also considered the notes of consultative psychologist Shirley Oxidine, Psy.D.  (AR 388-89) and the Mental RFC Assessment and Psychiatric Review Technique conducted by state agency consultant Joseph Patalano, Ph.D.  (AR 331-48.)

### A.   Paragraph B Criteria

In activities of daily living, the ALJ found that Forrest has no limitation.  The ALJ noted that Dr. Oxidine's notes documented Forrest's good hygiene and her ability to spend time playing with her dogs.  (AR 10.)  The ALJ found it significant that during Forrest's brief treatment for mental health issues, she "was able to exhibit full range of affect with euthymic affect noted."  (*Id.*)  The ALJ also observed that Dr. Oxidine "felt that [Forrest] did not have a mental disorder that was preventing work in July 2008."  (*Id.*)  Upon review of Dr. Oxidine's notes, the Court finds that the ALJ's assessment is supported by substantial evidence.  Specifically, treatment records repeatedly document

frustration and annoyance with family members, but do not reflect any indication of functional limitations arising from mental health issues.  (AR 388-89.)  Dr. Oxidine's July 2008 notes state that Forrest "is eager to return to work . . . . From the brief time I've been working with [Forrest], I think her main disability is physical and not a mood disorder."  (AR 389.)

 With respect to social functioning, the ALJ determined that Forrest has mild limitation.  (AR 10.)  The ALJ noted that although:

> Dr. Oxidine did note that in May 2008 [Forrest] reported having little contact with her friends, there is no evidence . . . that she was unable to work in close proximity to others.  In fact, her work starting in September 2008, which required interaction with a chronically ill patient, was successful to the extent that her hours were increased.

(AR 10.)  Regarding concentration, persistence or pace, the ALJ concluded that Forrest has mild limitation.  The ALJ observed that "Dr. Oxidine noted that [Forrest] had little difficulty on testing and was able to perform a serial 7s task.  She did indicate that [Forrest] was easily distractible during this assessment, but she did not indicate any such concerns in her therapy records."  (AR 11.)  In areas of decompensation, the ALJ concluded that Forrest has experienced no episodes of extended duration.  (*Id*.)

 In support of each of these conclusions, the ALJ cited to exhibits in the record. The Court has reviewed these records and finds that they do provide substantial evidence in support of the ALJ's conclusions.

### B. State Agency Consultant Reports

 In addition, as the ALJ noted, his conclusions regarding the four broad functional areas are consistent with the opinions of state agency consultant Joseph Patalano, Ph.D.

(AR 10-11.)  Dr. Patalano completed a Psychiatric Review Technique (AR 335-48) and a Mental RFC Assessment (AR 331-33) in May 2008.  Upon review of Forrest's SSA forms and medical evidence, Dr. Patalano concluded that Forrest was capable of sustaining concentration, persistence and pace for two-hour periods over an eight hour work day with a typical work week from a psychological perspective.  (AR 333.)  Dr. Patalano further documented that Forrest is not significantly limited in her understanding and memory, social interaction abilities, or adaptation abilities.  (AR 331-32.)  Although Dr. Patalano did state that Forrest "has a short fuse with increased pain," he also stated that this does not limit her ability to "collaborate with supervisors and coworkers" and that Forrest "can set goals" and "manage[ ] routine changes."  (AR 333.)

## C.    Combined Effects of Impairments

Insofar as Forrest argues that the ALJ failed to consider Forrest's mental impairments in combination with her other impairments, this argument is without merit. When considering the severity of a claimant's impairments, the ALJ must consider all impairments, severe and non-severe, in combination.  20 C.F.R. § 404.1520(a)(4)(ii); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  "Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity." *Bigwarfe v. Comm. of Social Security*, No. 7:06-CV-1397 (LEK/DRH), 2008 WL 4518737 (N.D.N.Y. Sept. 30, 2008) (citations omitted).

The ALJ considered the combined effects of Forrest's impairments at steps two and three in the five-step evaluation process.  At step two, the ALJ specifically referred to

considering combinations of impairments in making his disability determination.  (AR 8.)
The ALJ further stated:  "At step three, the undersigned must determine whether the
claimant's impairment or combination of impairments meets or medically equals the
criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P Appendix 1."  (*Id.*)
Despite concluding that Forrest's mental impairments were not severe, the ALJ
referenced her complaints of panic attacks in determining Forrest's RFC.  The ALJ stated
that:

> [i]n terms of the claimant's alleged panic attacks which affect her ability to
> do tasks such as shopping, the undersigned notes that the claimant has not
> reported such symptoms to a treating or examining source.  In fact, Dr.
> Oxidine . . . found no mental impairment that she felt would limit the
> claimant from working.

(AR 12.)  The ALJ then went on to discuss Forrest's other limitations arising from her
physical impairments, and concluded that Forrest retains the RFC to perform light work.
(*Id.*)  Thus, the ALJ's decision shows that he considered Forrest's impairments in
combination in determining her RFC.

## V.     Substantial Evidence Supports the ALJ's Determination That Forrest Retains the RFC for Light Work.

Next, Forrest argues that the ALJ improperly found that she retains the RFC for
the full range of light work.  (Doc. 9 at 15-16.)  Specifically, Forrest contends that there
is "no evidence" that she can perform light work.  (Doc. 9 at 16.)  The Court disagrees,
and finds that the ALJ's conclusion that Forrest retains the RFC for light work is
supported by substantial evidence.  Light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds.  Even though the weight lifted may be

very little, a job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with some pushing
and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b).

In determining Forrest's RFC, the ALJ discussed medical records in detail.  The

ALJ noted that Dr. Weischedel had reported that Forrest's "ability to perform manual

labor was limited but he did believe she could do other work and he stated that she was

not totally disabled . . . ."  (AR 13.)  The ALJ further found that:

> In July 2007 the claimant reported that she was having trouble finding work
> because of her need to take time to attend physical therapy, but she stated
> that she was somewhat comfortable.  In fact, only one month later she
> admitted that she was receiving unemployment compensation.  In
> December 2007 the claimant switched physicians and began treatment with
> Dr. Welch.  He documented full range of motion of the spine in January
> 2008.  He considered her examination to be normal and described the
> claimant as a pleasant individual. . . . Thereafter, in January 2009 the
> claimant began treatment with Dr. Michael Sirois who noted that she was
> working full-time, able to function well, able to perform all activities of
> daily living, and was very happy with her level of function.

(*Id.*(citations omitted).)  The Court has examined these records and agrees with the ALJ's

characterization of them.  In addition, as discussed above, the Court notes that Forrest's

physicians have generally documented that her symptoms are managed by her

prescription regimen.  (AR 221.)

Forrest also argues that the ALJ's failure to specifically adopt state agency

consultant Leslie Abramson, M.D.'s postural limitations renders the ALJ's RFC

determination improper.  (AR 345, 351.)  Consistent with the RFC to perform light work,

Dr. Abramson found that Forrest's impairments prevented her from lifting more than 20

pounds occasionally and more than 10 pounds frequently, and also that Forrest was

limited to standing, walking, and sitting for about six hours in an eight-hour workday.

(AR 350.)  With respect to postural limitations, Dr. Abramson found that Forrest was

able to climb and kneel frequently, but that she should only occasionally balance, stoop,

crouch, and crawl.  (AR 351.)  The ALJ did not explicitly acknowledge these postural

limitations.  Nevertheless, this omission constitutes harmless error.  At step four in the

sequential process, Forrest bears the burden of proving that she cannot perform her past

relevant work as a housekeeper.  *Butts*, 388 F.3d at 383.  Forrest does not argue that these

postural limitations would prevent her prevent her from housekeeping work.  Indeed, the

Dictionary of Occupational Titles entry for housekeeper indicates that the job does not

require balancing, crawling, or climbing, and requires only occasional stooping, crawling,

and kneeling.  *See* U.S. Dep't of Labor, Dictionary of Occupational Titles 248 (4th ed.

1991), 1991 WL 672783.  Accordingly, the ALJ's failure to include these postural

limitations has no effect upon his ultimate conclusion that Forrest can perform her past

relevant work as a housekeeper.

## VI.   Substantial Evidence Supports the ALJ's Determination that Forrest is Not Disabled.

Finally, Forrest argues that substantial evidence does not support the ALJ's

determination.  The Court acknowledges that the record contains medical evidence

showing that Forrest has suffered from neck, back, and shoulder pain for many years.

However, treatment notes, objective medical evidence, and Forrest's own reported

activities, discussed above, provide substantial evidence supporting the ALJ's

conclusions.  If the reviewing court finds substantial evidence to support the

Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists.  *See Alston*, 904 F.2d at 126; *DeChirico*, 134 F.3d at 1182-83.

## Conclusion

For the reasons stated above, the Court DENIES Forrest's Motion (Doc. 9), and GRANTS the Commissioner's Motion (Doc. 12), thereby AFFIRMING the Commissioner's decision.

Dated at Burlington, in the District of Vermont, this 24th day of February, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge